UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ARIEL VIGO,                              )
                                         )
         Plaintiff,                      )
                                         )
                                         )      CIVIL ACTION NO.
VS.                                      )
                                         )      3:11-CV-2044-G
GABE REED d/b/a GABE REED                )
PRODUCTIONS,                             )
                                         )
         Defendant.                      )

**MEMORANDUM OPINION AND ORDER**

Before the court is the plaintiff's Rule 12(b)(6) motion to dismiss the defendant's counterclaims (docket entry 20). For the reasons stated below, the motion is granted in part and denied in part.

I. BACKGROUND

A. Factual Background

This is a contract dispute. The plaintiff is Ariel Vigo ("Vigo"), a concert promoter in Buenos Aires, Argentina. Complaint ¶ 7 (docket entry 1). The defendant is Gabe Reed ("Reed"), a concert promoter in Dallas, Texas. *Id.* ¶ 8. The court has already set forth the general factual background of the case. *See*

Memorandum Opinion and Order of December 16, 2011 ("Order") at 1-2 (docket entry 9).

According to Reed, sometime before Vigo wired Reed the $150,000 deposit at issue in the case, *see* Order at 2, Reed became aware that Vigo had "unilaterally advertised a Motley Crue concert . . . for May 20, 2011" when "[n]either [the] date, nor [the] venue had been agreed upon by Reed." Defendant's First Amended Answer & Counterclaims ("Answer") ¶ 52 (docket entry 19). On January 20, 2011, Reed emailed Vigo stating, "Announcing the show with no deposit is not right and underhanded." *Id.* Vigo then sent Reed the $150,000 deposit in two different transactions on January 25 and 26. Complaint ¶ 12.

On January 27, Reed emailed Vigo stating, "After you hear this week that I have received other higher offers from your competitors, you attempt to rush a deposit into my account after waiting more than a month to do so." Answer ¶ 53. The next day, on January 28, Reed demanded that Vigo "cease advertising shows for which no agreement[,] written or oral[,] between Vigo and Reed existed." *Id.* ¶ 57. Vigo responded by saying, "I have [a right] to advertise the show, you got my [$150,000] in your account." *Id.* ¶ 58.

Vigo's response also contained a section addressed to unknown individuals, "Carlos, Maxi, [and] Cristian," in Spanish that "[r]oughly translated . . . to Vigo telling other promoters in Argentina that they could shut down Mr. Reed's shows[ ]

and accusing Mr. Reed of sharp business practices." *Id.* ¶ 58, n.1.  In addition, Reed alleges that between late January and late February 2011, Vigo made numerous statements via email to various individuals that caused Reed "difficulty in negotiating transactions concerning the shows with other local promoters in Buenos Aires," thus diminishing the value of the shows.  *Id.* ¶¶ 59-60.  Reed cites only one of these emails, a January 28th correspondence from Vigo to an individual named Dan DeVita, stating that Reed still had Vigo's money while negotiating with other promoters and that Reed was not acting responsibly.  *Id.* ¶ 59.

On January 31, Reed entered into a contract with 4G Productions ("4G"), a different Argentinian promoter, for two Motley Crue concerts on May 19 and 20, 2011.  Plaintiff's Brief in Support of Motion to Dismiss Defendant's Counterclaim Pursuant to FED. R. CIV. P. 12(b)(6) ("Motion") at 5 (docket entry 20).  According to Reed, Vigo's advertisements and statements to others caused Reed to enter a contract with a smaller promoter and lose in excess of $150,000 because of reduced ticket sales.  Answer ¶ 61.

B.  Procedural Background

On August 16, 2011, Vigo filed a complaint in this court.  Complaint at 1.  On May 9, 2012, Reed filed an amended answer with counterclaims.  Answer at 1.  Reed asserts counterclaims against Vigo seeking damages for (1) tortious interference with

an existing contract, (2) business disparagement, and (3) trade secret misappropriation. *Id.* ¶¶ 63-77.

Vigo now moves to dismiss Reed's counterclaims under FED. R. CIV. P. 12(b)(6).

### C. Legal Standard

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007), *cert. denied*, 552 U.S. 1182 (2008)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc.*

*v. Dallas Area Rapid Transit*, 396 F.3d 464, 467 (5th cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 1949. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 1950 (*quoting* FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" his claims against the defendant "across the line from conceivable to plausible." See *id.* at 1950, 52.

## II. ANALYSIS

### A. Tortious Interference with Existing Contract

In his motion to dismiss, Vigo argues that Reed's tortious interference with contract claim lacks merit because the acts that allegedly interfered with the contract between Reed and 4G took place before the contract existed. Motion at 6. To recover for tortious interference with contract under Texas law, a plaintiff must prove: "(1) *that a contract subject to interference exists*; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual damage or loss occurred." *Amigo Broadcasting, LP v. Spanish Broadcasting System, Inc.*, 521 F.3d 472, 489 (5th Cir. 2008) (emphasis added) (citing *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)).

Reed's counterclaim specifically alleges that "Vigo willfully and intentionally interfered with Reed's contract with 4G by advertising concerts despite the fact he had no interest in those concerts." Answer ¶ 65. By Reed's own admission, Reed became aware of the advertising sometime before January 25, *id.* ¶ 52, and sent an email to Vigo on January 28 that demanded Vigo "cease advertising shows for which no agreement written or oral between Vigo and Reed existed." *Id.* ¶ 57. Reed entered the contract with 4G on January 31, three days after the cease-and-desist email. Reed makes no allegation that Vigo continued to advertise the Motley Crue concert after January 28.

In his response to Vigo's motion to dismiss, Reed also claims that Vigo interfered with his contract with 4G by making "statements to third parties . . . concerning the subject matter of Mr. Reed's contract with 4G." Gabe Reed's Response to Ariel Vigo's Motion to Dismiss Defendant's Counterclaims & Brief in Support ("Response") at 3 (docket entry 21). However, there is no such allegation in Reed's counterclaim. *See* Answer ¶¶ 63-67 (referencing the advertisements as the only form of interference). The counterclaim does allege that Vigo's comments to third parties "caused Mr. Reed difficulty in negotiating transactions concerning the shows with other local promoters." *Id.* ¶ 60. Reed did not allege that such comments interfered with an <u>existing</u> contract, however, until his response to the motion to dismiss. Reed therefore cannot rely on this allegation to defeat Vigo's motion to dismiss.

Reed has failed to plead facts that give rise to a claim for tortious interference. The court thus grants Vigo's motion to dismiss this claim.

### B. Business Disparagement

Vigo also argues that Reed's counterclaim for business disparagement fails the Rule 12(b)(6) standard because "Reed has not properly alleged that the statements were false nor properly alleged special damages related to these statements." Motion at 6. To recover for the tort of business disparagement under Texas law, a plaintiff must prove "publication by the defendant of disparaging words, falsity, malice, lack of

privilege, and special damages." *C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 694 (5th Cir. 2001) (citation and punctuation omitted). The court concludes that Reed has sufficiently pled facts that plausibly satisfy each essential element of this tort.

With regard to the tort's publication element, Reed stated that Vigo "made numerous statements via e-mail" to various individuals. Answer ¶ 59. Further, "the souring of relations" between Reed and Vigo led Vigo to "publish the statement[s] with *malice* and *without privilege*." *Id.* ¶ 70. (emphasis added). The "statement[s] [were] *false* because Vigo had no contract with Reed." *Id.* ¶ 69 (emphasis added). The statements allegedly limited Reed's opportunities to negotiate with other promoters in the area, and Reed entered into a contract with a smaller promoter than he otherwise would have. *Id.* ¶¶ 60-61. The promoter placed the concert in a smaller venue, resulting "in excess of $150,000 in losses as a result of reduced ticket sales." *Id.* ¶ 61. Thus, the court concludes that Reed has sufficiently pled the special-damages element. *Id.* ¶ 72; see also *C.P. Interests*, 238 F.3d at 694-95 (concluding that proof of special damages in a business-disparagement claim "requires that plaintiff establish pecuniary loss that has been realized . . . as in the case of lost sales") (citation and punctuation omitted).

Reed has alleged facts that give rise to a plausible claim for business disparagement. The court therefore denies Vigo's motion to dismiss this claim.

### C.  Trade Secret Misappropriation

Finally, Vigo argues that Reed has not properly alleged any of the required elements of a trade secret misappropriation claim.  Motion at 8.  Under Texas law, a claim of trade secret misappropriation requires a plaintiff to show "(a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret without authorization from the plaintiff."  *Tewari De-Ox Systems, Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 610 (5th Cir. 2011) (quoting *Phillips v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994)).

Reed pled that his knowledge of Motley Crue's tour schedule constituted marketing information protectable as a trade secret.  Answer ¶ 74.  In support of this claim, Reed argued that such knowledge gave him a competitive advantage by hindering competitors from booking similar acts around the same time.  *Id.* ¶ 75.  Whether a trade secret exists is usually a question of fact to be determined by a factfinder.  *General Universal Systems, Inc. v. Lee*, 379 F.3d 131, 150 (5th Cir. 2004).  Under Texas law, such a decision depends on the balancing of six different factors: "(1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to safeguard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money

expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Id.* (citing *In re Bass*, 113 S.W.3d 735, 739-40 (Tex. 2003)). Because each of the aforementioned factors turns on factual considerations that cannot be resolved before pretrial discovery, a Rule 12(b)(6) motion is not the proper vehicle to determine whether a trade secret existed.

Further, Reed alleged that "Vigo acquired knowledge of Reed's trade secret through a relationship of trust with Reed that gave rise to a duty of confidentiality." Answer ¶ 75. Considering the parties' relationship as demonstrated in Reed's factual pleading, *id.* ¶¶ 52-62, the court concludes that it is plausible that Vigo acquired knowledge of the alleged trade secret through a confidential relationship with Reed.

Finally, Reed averred that Vigo "used" the trade secret "by engaging in unauthorized advertising and attempted ticket sales." *Id.* ¶ 75. "'Use' of a trade secret means commercial use, by which a person seeks to profit from the use of the secret." *General Universal Systems, Inc. v. HAL, Inc.*, 500 F.3d 444, 450 (5th Cir. 2007) (citing *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 464 (Tex. App. 2004)). Using the alleged trade secret by advertising the concerts in an effort to sell tickets plausibly constitutes "commercial use." The court consequently concludes that Reed has sufficiently pled that Vigo used the alleged trade secret without authorization.

Reed has pled facts that give rise to a plausible claim for trade secret misappropriation. Accordingly, the court denies Vigo's motion to dismiss this claim.

## III. CONCLUSION

For the reasons stated above, the plaintiff's motion to dismiss is **GRANTED** in part and **DENIED** in part.

**SO ORDERED**.

November 1, 2012.

_____
**A. JOE FISH**
**Senior United States District Judge**