UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ARIEL VIGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:11-CV-2044-G |
| GABE REED d/b/a GABE REED | ) | |
| PRODUCTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the plaintiff's motion for summary judgment (docket entry 28). For the reasons stated below, the motion is granted.

### I. BACKGROUND

#### A. Factual Background

This is a breach of contract action arising out of a concert promoter's failure to provide a promised concert in Argentina. The plaintiff, Ariel Vigo ("Vigo"), is a concert promoter in Buenos Aires, Argentina. *See* Brief in Support of Plaintiff's Motion for Summary Judgment ("Motion") at 2 (docket entry 28-1). The defendant,

Gabe Reed ("Reed"), is a concert promoter in Dallas who works with the music group

Motley Crue and some of the individual members of that group. *Id.* The court has

set out the general factual background of this case on prior occasions. *See*

Memorandum Opinion and Order of December 16, 2011 at 1-2 (docket entry 9) and

Memorandum Opinion and Order of November 1, 2012 at 1-3 (docket entry 26).

B.  Procedural Background

On August 16, 2011, Vigo filed a complaint in this court. *See generally*

Complaint (docket entry 1).  On October 26, 2011, Reed filed a motion to dismiss,

*see* Defendant Gabe Reed d/b/a Gabe Reed Productions' Rule 12(b)(6) and Rule 9(b)

Motion to Dismiss Complaint (docket entry 7), which was denied on December 16,

2011.  *See* Memorandum Opinion and Order of December 16, 2011 (docket entry 9).

Reed filed an answer on December 29, 2011, *see* Defendant Gabe Reed d/b/a Gabe

Reed Productions' Original Answer and Affirmative Defenses (docket entry 10), and

an amended answer and counterclaims on May 9, 2012.  *See* Defendant's First

Amended Answer and Counterclaims (docket entry 19).  On May 30, 2012, Vigo

filed a motion to dismiss Reed's counterclaims, *see* Plaintiff's Motion to Dismiss

Defendant's Counterclaims Pursuant to FED. R. CIV. P. 12(b)(6) (docket entry 20),

which the court granted in part and denied in part on November 1, 2012.  *See*

Memorandum Opinion and Order of November 1, 2012 (docket entry 26).  Reed's

attorneys filed a motion to withdraw on June 21, 2012, *see* Motion to Withdraw

(docket entry 22), which the court conditionally granted on August 9, 2012.[1]  *See* Order of August 9, 2012 (docket entry 24).  On August 28, 2012, Vigo served Reed with a set of requests for admission via U.S. First Class mail.  *See* Plaintiff's Appendix in Support of Plaintiff's Motion for Summary Judgment ("Appendix"), Declaration of Michael D. Kuznetsky in Support of Plaintiff's Motion for Summary Judgment ("Kuznetsky Decl.") at 9 ¶ 3 (docket entry 28-2); *see also generally* Appendix, Second Set of Requests for Admission to Gabe Reed ("RFA") at 12-24 (docket entry 28-2).  To date, Reed has not responded to these requests.[2]  *Id.* at 10 ¶ 5.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[1]     The court granted the motion on condition that Reed's attorneys file notice with the court of transmission of the order to Reed.  Because the attorneys did not file this notice of transmission until December 19, 2012, they were not officially allowed to withdraw until this date.  *See* Order of December 19, 2012 (docket entry 29).  However, the attorneys' response to the December 19, 2012 order to show cause shows that Reed had notice, at least as of August 17, that he was no longer represented by counsel in this case.  *See* Exhibit C to Winocour and Ray's Response to Court's Order to Show Cause at 1 (docket entry 30).

[2]     In fact, the court's communications with Reed's former attorneys, the mediator on this case, and the plaintiff's attorneys have revealed that none of these parties have been able to contact or communicate with Reed.  The court's own attempts to communicate with Reed have been similarly futile.  *See* Order of December 20, 2012 (docket entry 31).

law." FED. R. CIV. P. 56(a), (c)(1).[3] A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham."). To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id*. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not incumbent upon the court to comb the record in search of evidence that creates a

---

[3]     Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

genuine issue as to a material fact.  See *Malacara v. Garber*, 353 F.3d 393, 405 (5th

Cir. 2003).  The nonmoving party has a duty to designate the evidence in the record

that establishes the existence of genuine issues as to the material facts.  *Celotex*

*Corporation v. Catrett*, 477 U.S. 317, 324 (1986).  "When evidence exists in the

summary judgment record but the nonmovant fails even to refer to it in the response

to the motion for summary judgment, that evidence is not properly before the district

court."  *Malacara*, 353 F.3d at 405.

### B.  August 28 Requests for Admission

#### 1.  *Legal Standards*

Fed. R. Civ. P. 36 permits a party to serve "a written request to admit, for

purposes of the pending action only, the truth of any matters within the scope of

Rule 26(b)(1) relating to:  (A) facts, the application of law to fact, or opinions about

either . . ."  The rule also states that "[a] matter is admitted unless, within 30 days

after being served, the party to whom the request is directed serves on the requesting

party a written answer or objection addressed to the matter . . ."  Fed. R. Civ. P.

36(a)(3).  Unanswered requests for admission are properly considered "an

uncontroverted factual bas[is] for summary judgment purposes."  See *Mahaney v.*

*Doering*, 260 F.Supp. 1006, 1007 (E.D. Pa. 1966).  The fact that the same matters

were previously covered in other discovery does not prevent the court from deeming

them admitted.  See, *e.g.*, *United States v. Kasuboski*, 834 F.2d 1345, 1349-50 (7th Cir.

1987).  Requests for admission of "a pure matter of law" are impermissible.  See 8B

C. WRIGHT & A. MILLER, *Federal Practice & Procedure Civ.* § 2255 (3d ed.).

### 2.  *Application*

Reed has failed to respond to Vigo's August 28, 2012 requests for admission.

Therefore, the court deems admitted all of the August 28, 2012 requests to admit

matters of fact, or matters applying law to fact.

### C.  <u>Breach of Contract</u>

The requests for admission to which Vigo points show that there is no genuine

dispute as to any material fact touching its breach of contract claim and that Vigo is

entitled to judgment as a matter of law on this claim.  Texas law provides that "[t]he

essential elements in a breach of contract claim are as follows:  (1) the existence of a

valid contract; (2) that the plaintiff performed or tendered performance; (3) that the

defendant breached the contract; and (4) that the plaintiff was damaged as a result of

the breach."  See *Bridgmon v. Array Systems Corporation*, 325 F.3d 572, 577 (5th Cir.

2003) (internal quotations omitted), quoting *Frost National Bank v. Burge*, 29 S.W.3d

580, 593 (Tex. App.--Houston [14th Dist.] 2000, no pet.).

Reed has admitted the existence of an agreement between Vigo and himself,

under which Reed would arrange for a Motley Crue concert to be held in Buenos

Aires, Argentina sometime in the spring of 2011.  *See* RFA at 20 ¶¶ 45-50.  Reed has

also admitted that Vigo performed under the contract, depositing $150,000 with

Reed according to the terms of the agreement.  *Id.* ¶¶ 57-60.  Reed has admitted that

he breached the agreement, because no Motley Crue concert took place in Buenos

Aires in accordance with the terms of the agreement.  *Id.* ¶¶ 53, 66.  Instead, Reed

admits that he promoted a Motley Crue concert in conjunction with 4G Producciones

on May 19 and May 20, 2011.  *Id.* ¶¶ 62-65.  Finally, Reed has admitted that Vigo

sustained damages in connection with the breach of the agreement.  *Id.* ¶¶ 67-68, 70-

72.  Furthermore, since Reed never responded to Vigo's motion for summary

judgment, there is no evidence before the court to the contrary.

## D.  Fraudulent Inducement

The requests for admission to which Vigo points show that there is no genuine

dispute as to any material fact touching Vigo's fraud claim and that Vigo is entitled to

judgment as a matter of law on this claim.

> To state a claim for fraudulent inducement under Texas
> law, a plaintiff must prove the basic elements of fraud:
> (1) a material misrepresentation; (2) that is false; (3) when
> the defendant made the representation, the defendant
> knew it was false or made the statement without any
> knowledge of its truth; (4) the defendant intended the
> plaintiff to rely on the representation, and the plaintiff
> actually relied on the representation; and (5) the
> defendant's actions caused an injury.

*Kevin M. Ehringer Enterprises, Inc. v. McData Services Corporation*, 646 F.3d 321, 325

(5th Cir. 2011), citing *Formosa Plastics Corporation USA v. Presidio Engineers &*

*Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

Reed has admitted that he made a false representation to Vigo regarding the Motley Crue performance that was material to the contractual relationship between the two. *See* RFA ¶¶ 51-53. Reed has also admitted that he knew the statement was false when he made it. *Id.* ¶¶ 54-55. Reed has admitted that he intended Vigo to rely on the representation. *Id.* ¶ 56. Vigo has shown actual reliance, to which Reed has admitted. *See* Appendix, Declaration of Ariel Vigo in Support of Plaintiff's Motion for Summary Judgment ("Vigo Decl.") at 5 ¶¶ 7-10; *see also* RFA ¶ 56. And finally, Reed has admitted that the false representation he made in connection with the Motley Crue contract caused Vigo injury. *Id.* ¶¶ 66-72. Furthermore, since Reed never responded to Vigo's motion for summary judgment, there is no evidence before the court to the contrary.

### E.  Negligent Misrepresentation

The requests for admission to which Vigo points show that there is no genuine dispute as to any material fact touching Vigo's negligent misrepresentation claim and that Vigo is entitled to judgment as a matter of law on this claim.

The elements of a cause of action for the breach of this duty are:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Federal Land Bank Association of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

The same admissions that establish Vigo's claim for fraud against Reed also establish the elements of Vigo's negligent misrepresentation claim. *See above* Section II.D. Furthermore, since Reed never responded to Vigo's motion for summary judgment, there is no evidence before the court to the contrary.

### F. Unjust Enrichment

Vigo's unjust enrichment claim is pled in the alternative. Courts in this district, as well as numerous Texas appeals courts, have held that "Texas law does not afford an independent cause of action for unjust enrichment." See *Hancock v. Chicago Title Insurance Company*, 635 F.Supp.2d 539, 561 (N.D. Tex. 2009) (Fitzwater, C.J.), aff'd, *Benavides v. Chicago Title Insurance Company*, 636 F.3d 699 (5th Cir. 2011); see also *id.* at 560 (collecting Texas appeals court cases holding that there is no independent cause of action in Texas law for unjust enrichment). This court agrees; therefore, Vigo's unjust enrichment claim fails.

### G. Reed's Affirmative Defenses and Counterclaims

Reed bears the burden of proof with respect to the affirmative defenses and counterclaims alleged in his amended answer. See *United States v. Central Gulf Lines, Inc.*, 974 F.2d 621, 629-30 (5th Cir. 1992) (assigning the burden of proof to the party pleading an affirmative defense), *cert. denied,* 507 U.S. 917 (1993); see also, *e.g., Country Hollow Joint Venture v. Enterprise Capital Company, N.V.*, 979 F.2d 1534 (5th

Cir. 1992) (assigning burden of proof to the defendant raising a counterclaim).  Vigo

correctly notes that Reed has presented no evidence supporting his affirmative

defenses and counterclaims.  *See* Motion at 11-12.  Since Reed never responded to

Vigo's motion for summary judgment, there is no evidence before the court to

support Reed's counterclaims and affirmative defenses.  The court thus grants Vigo's

motion for summary judgment on Reed's counterclaims.  Reed's affirmative defenses

are also not availing to defeat summary judgment, since he has presented no evidence

to support them.

## H.  <u>Damages</u>

Under Texas law governing damages for breach of contract, "[a] nonbreaching

party is generally entitled to all actual damages necessary to put it in the same

economic position in which it would have been had the contract not been breached."

*CQ, Inc. v. TXU Mining Company, L.P.*, 565 F.3d 268, 278 (5th Cir. 2009) (internal

quotations omitted), quoting *Abraxas Petroleum Corporation v. Hornburg*, 20 S.W.3d

741, 760 (Tex. App.--El Paso 2000, no pet.).  Vigo has presented reliable, unrebutted

evidence of his lost profits for Reed's breach of the promotion contract, including a

detailed revenue projection for the concert and an estimate of the costs of holding the

performance.  *See* Appendix, Vigo Decl., at 6-7 ¶ 16.  Vigo argues that he is entitled

to the profits he would have earned from the performance, plus the lost $150,000

deposit he sent to Reed.[4]  *See* Motion at 9.  Vigo is not entitled to add the amount of

the lost deposit to his lost profits.  Had the contract been performed, part of the

expense of the contract would have been the fee paid to Reed.  In fact, the lost profits

figure Vigo has submitted does not appear to include the expense of the full fee that

would have been paid to Reed had the concert taken place.[5]  The court will therefore

deduct the part of Reed's $300,000 fee that Vigo did not pay ($150,000) from the

lost profits figure as calculated by Vigo.  Vigo's damages for breach of the promotion

contract are therefore $1,407,961.81.

Vigo also argues he is entitled to an exemplary damage award, for the malice

Reed admitted in connection with Vigo's fraudulent inducement claim.  *See* Motion

at 10.  However, a predicate to a punitive damages claim for fraud is a showing of

"actual damages sustained from [the] tort."  See *Mullins v. TestAmerica, Inc.*, 564 F.3d

386, 417 (5th Cir. 2009) (quotations omitted), quoting *Twin City Fire Insurance*

*Company v. Davis*, 904 S.W.2d 663, 665 (Tex. 1995).  In this case, Vigo has made no

---

[4]      Page 9 of the plaintiff's summary judgment brief contains an apparent
typographical error.  It states that Vigo's lost profits were $6,231,847.25 USD.
Motion at 9.  However, Vigo states in his declaration that the lost profits figure is
actually $1,557,961.81 USD.  Appendix, Vigo Decl. at 4 ¶ 16.c.  It appears that the
number cited in the motion is actually the lost profits figure as calculated in
Argentine Pesos.  *Id.*

[5]      Vigo's declaration is slightly unclear on this point, as Vigo deducts from
the expected concert revenue the "total costs for the show."  *See* Appendix, Vigo Decl
at 4 ¶ 16.b.  However, since these costs were "costs for the show" agreed upon with
Reed, it appears they do not include Reed's fee.

such showing.  The only evidence of damages Vigo has submitted are the lost profit

damages resulting from the breach of the promotion contract.  *See* Motion at 9-10.

Vigo has submitted no evidence of actual damages sustained from Reed's fraudulent

inducement.  *See*, *e.g.*, Motion at 10.  It is well-settled in Texas law that punitive

damages are not available for a breach of contract.  See, *e.g.*, *Gonzalez v. De La Grana*,

82 Fed. Appx. 355, 357 (5th Cir. 2003), citing *Manges v. Guerra*, 673 S.W.2d 180,

184 (Tex. 1984).  Thus, the court will not award punitive damages in this case.

Since Vigo was awarded damages, he is further entitled to recover his

reasonable attorneys' fees from Reed.  *See* TEX. CIV. PRAC. & REM. CODE § 38.001(8);

see also *Mathis v. Exxon Corporation*, 302 F.3d 448, 462 (5th Cir. 2002).

### III.  CONCLUSION

For the reasons stated above, the plaintiff's motion for summary judgment is

**GRANTED**.  Within ten days of this date, counsel for Vigo shall submit a proposed

form of judgment in conformity with this memorandum opinion and order.

**SO ORDERED**.

March 4, 2013.

A. JOE FISH
**Senior United States District Judge**